IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNIFER RUTH SMITH,

    Plaintiff,

vs.                                                Civ. No. 18-481 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record filed August 24, 2018, Doc. 12, in support of Plaintiff Jennifer Ruth Smith's Complaint, Doc. 1, seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying Plaintiff's claim for disability insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. On December 28, 2018, Plaintiff filed her Motion To Reverse And Remand For Payment Of Benefits, Or In The Alternative, For A Rehearing, With Supporting Memorandum. Doc. 21. The Commissioner filed a Brief in Response on February 28, 2019, Doc. 25, and Plaintiff filed a Reply on March 30, 2019, Doc. 26. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED**.

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Doc. 20.

I.   **Background and Procedural Record**

Claimant Jennifer Ruth Smith suffers from the following severe impairments: multiple ventricular shunt revisions for hydrocephalus[3] and scoliosis. Administrative Record ("AR") at 4500. She alleges that she became disabled as of July 21, 2010. AR 131, 4498. She has a high school degree and is working on a college degree, having attended three years of college as of the time of her application. AR 165. She has past work as a credit authorizer and a cashier/checker. AR 4546.

On May 10, 2011, Ms. Smith filed a claim of disability under Title XVI. AR 4498. Her applications were initially denied on December 22, 2011 (AR 61), and upon reconsideration on March 15, 2012 (AR 62). Administrative Law Judge ("ALJ") Ann Farris conducted a hearing on July 31, 2013. AR 29. Ms. Smith appeared in person at the hearing with attorney representative Gary Martone. AR 29. The ALJ took testimony from Ms. Smith and an impartial vocational expert ("VE"), Pamela Bowman. AR 27, 118.

On December 2, 2013, ALJ Farris issued an unfavorable decision. AR 9-28. After the Appeals Council denied review on March 10, 2015, AR 1, Ms. Smith appealed to federal court. On November 12, 2015, the Commissioner stipulated to a remand. AR 4551-52. The Court entered its remand order on November 13, 2015. AR 4553. On remand, on March 25, 2016, the Appeals Council instructed the ALJ to reconsider her evaluation of the opinion of consultative examiner Dr. Karl Moedl. AR 4561-62.

---

[3] Hydrocephalus is the buildup of fluid in the cavities (known as ventricles) deep within the brain. The excess fluid increases the size of the ventricles and puts pressure on the brain. A shunt is an implant that diverts fluid from the ventricles to another body region where it will be absorbed. Ms. Smith's hydrocephalus is congenital. AR 4501.

2

On September 20, 2016, Ms. Smith appeared and testified at a second hearing before ALJ Farris. AR 4657. She appeared with her attorney, Felix Martone. *Id.* The ALJ took testimony from Ms. Smith and VE Karen Provine. *Id.* ALJ Farris issued an unfavorable decision on November 3, 2016. AR 4495-4517. On March 30, 2018, the Appeals Council denied review. AR 4486. It found no basis for changing the ALJ's decision and found that the ALJ complied with the orders of this Court and the Appeals Council. AR 4487. The ALJ's decision is the Commissioner's final decision for purposes of judicial review. *Id.* Because the parties are familiar with Ms. Smith's medical history, the Court reserves discussion of the medical records relevant to this appeal for its analysis.

**II.  Applicable Law**

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked

3

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

---

before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

4

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to

discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

### III. Analysis

In support of her Motion to Remand, Ms. Smith raises three main arguments: (1) the ALJ erred at step four by relying on Ms. Smith's activities of daily living to discredit her subjective symptom evidence related to headaches; discounting evidence of Ms. Smith's scoliosis symptoms; incorrectly assessing the medical opinion evidence from Dr. Karl Moedl and Dr. John Owen; and failing to follow the instructions in the Appeals Council's March 25, 2016 remand order, Doc. 21 at 12-23; (2) the ALJ erred at step five by failing to clarify the VE testimony; failing to adopt the VE testimony; failing to assess whether the identified number of jobs is significant; and failing to resolve a conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT"), Doc. 21 at 23-26; and (3) the ALJ failed to rule on Ms. Smith's request to reopen a prior application, Doc. 21 at 27. Ms. Smith asks the Court to remand with instructions for the Commissioner to issue disability benefits; in the alternative, she requests a remand for rehearing. Doc. 21 at 27.

The Court agrees that the ALJ erred at step four. At step four, the ALJ found that, despite her severe impairments, Ms. Smith is capable of performing most of the range of sedentary work.

6

AR 4501. The Court finds that the ALJ improperly disregarded, without an explanation, opinion evidence from a consulting psychologist, Dr. Owen, that Ms. Smith has moderate to marked difficulty adapting to change in the workplace, moderate difficulty dealing with stress in the workplace, and moderate difficulty focusing and persisting at most work tasks. The Court will remand for rehearing and deny Ms. Smith's request to remand with instructions to award disability benefits. Because Ms. Smith's remaining arguments may be affected by the ALJ's treatment of this case on remand, the Court will not address those arguments. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

A. <u>Legal Standard</u>

The ALJ is required to evaluate every medical opinion she receives. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The regulations require the ALJ to consider several specific factors in weighing an opinion, such as the supportability of the opinion and its consistency with the record as a whole. 20 C.F.R. § 416.927.[5] Before rejecting an opinion, the ALJ must provide specific and legitimate reasons for this rejection. *Doyal*, 331 F.3d at 764. The ALJ's reasons are reviewed for substantial evidence. *Id*.

The Tenth Circuit held in *Haga v. Astrue* that "[a]n ALJ is not entitled to pick and choose through an uncontradicted[6] medical opinion, taking only the parts that are favorable to a finding of nondisability." 482 F.3d 1205, 1208 (10th Cir. 2007). In *Haga*, a state agency examining psychological consultant reviewed the record and recommended additional testing. 482 F.3d at

---

[5] This regulation applies to claims, such as the current one, filed before March 27, 2017.

[6] Although the parties do not brief this issue, it appears that Dr. Owen's opinion is uncontradicted. There are no psychological opinions in the record other than Dr. Owen's. The reviewing state agency consultants accorded his opinion "great weight" and did not perform their own mental RFC assessment. AR 68, 70.

1207. The ALJ agreed and the doctor did his additional tests. *Id.* "[P]art of his detailed response was to fill out a mental RFC form, on which he marked appellant moderately impaired in seven out of ten functional categories." *Id.* While the ALJ's RFC incorporated three of these moderate limitations, it did not incorporate the other four. *Id*. Further, the ALJ did not provide an explanation for rejecting the remaining four moderate limitations and "the evidence on which the ALJ explicitly relied in his decision [did] not imply an explanation . . . ." *Id.*

On appeal, the Tenth Circuit noted "it is simply unexplained why the ALJ adopted some of [the doctor]'s restrictions but not others." *Id.* at 1208. Although an "ALJ is entitled to resolve any conflicts in the record," the court stressed that an ALJ must actually identify the evidence that conflicts with the doctor's medical opinion or RFC assessment. *Id.* In other words, the ALJ must either accept and incorporate the consulting doctor's opinion or explain why each relevant part of the opinion is disregarded. *Id.*

    B.    <u>The ALJ Erred In Her Discussion Of Opinion Evidence From Dr. Owen.</u>

In December 2011, consulting psychologist John P. Owen, Ph.D., performed an evaluation of Ms. Smith. AR 417-19. Dr. Owen found Ms. Smith friendly, cooperative and able to understand simple questions and instructions. AR 418. He estimated that she functions in at least the average range of mental ability. *Id.* Dr. Owen discussed at length Ms. Smith's problems with her shunt malfunctions and her stress. AR 417-18. He then provided his opinion that

> Ms. Smith can understand simple questions and instructions. She would have marked difficulty dealing with detailed, complex communication. She would have moderate difficulty dealing with stress in the workplace. She would have moderate difficulty interacting with others in an employment setting. She would have moderate difficulty focusing and persisting at most work tasks. She would have moderate to marked difficulty adapting to change in the workplace.

AR 419.

The ALJ summarized Dr. Owen's opinion and accorded it "partial weight" because "his limitations on social functioning and adaptation are unfounded." AR 4504. The ALJ stated that "[i]t appears that Dr. Owens [sic] appropriately bases these non-exertional limitations on the claimant's physical pain symptomology, rather than any cognizable mental health disorder." AR 4504. The ALJ explained:

> Specifically, medical professionals throughout the record have noted no behavior defects and a pleasant demeanor. In daily life, the claimant resides with and takes care of her two minor children, sees other family members on a weekly basis, and frequents public places like the grocery store. Neither the allegations nor the medical records indicate that she has a tendency to socially isolate or lacks the capacity to interact independently, appropriately, effectively and on a sustained basis with other individuals, such as family members, friends or medical providers.

AR 4504-05.

There are three problems with the ALJ's reasoning. First, the ALJ's explanation concerns only Ms. Smith's social functioning and does not include any discussion of Dr. Owen's opinions that Ms. Smith has "moderate to marked difficulty adapting to change in the workplace"; "moderate difficulty dealing with stress in the workplace"; and "moderate difficulty focusing and persisting at most work tasks." AR 419. The ALJ simply never mentions these limitations. This is error under *Haga*.

Second, even though the ALJ largely rejected Ms. Smith's subjective complaints of pain, AR 4502-04, the ALJ contradictorily determined that Dr. Owen "appropriately" based his opinion on Ms. Smith's "pain symptomology." AR 4504. Thus, the ALJ's opinion is internally inconsistent.

Third, the ALJ's statement that Dr. Owen based his opinion on Ms. Smith's "pain symptomology" is simply incorrect. Dr. Owen never explained to what extent he was crediting Ms. Smith's allegations of pain. He never found that Ms. Smith's limitations were the product of

9

pain rather than mental health issues. Nor would it have been logical for him to do so. Most of the non-exertional limitations he assessed typically stem from mental health issues rather than issues with physical pain. For example, the Administration recognizes that the inability to deal with routine work stress is characteristic of *mental illness*, not pain symptomology. SSR 83-15, 1985 WL 56857, at *6 ("Mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.").[7]

For the above stated reasons, the Court concludes that the ALJ's rationale for partially rejecting Dr. Owen's opinion is not supported by substantial evidence and, further, that it was error for the ALJ not to address all of the limitations Dr. Owen assessed.

C. The ALJ's RFC Does Not Account For The Limitations Dr. Owen Assessed.

The Commissioner contends that the ALJ need not have discussed each of the limitations Dr. Owen assessed because the ALJ otherwise accounted for those restrictions in her RFC. Doc. 24 at 16-17. This RFC included limiting Ms. Smith to "simple routine tasks" and specifying that she "cannot perform work at a production rate pace or perform tandem tasks." *Id*. The Commissioner cites *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), for the proposition that an ALJ need not repeat the moderate limitations a doctor assesses if the ALJ's description of what work the claimant can perform incorporates those same limitations. Doc. 25 at 16. *Smith* is not quite on point. That decision dealt with medical opinions expressed on a standard form state

---

[7] Of course, physical pain could theoretically also make it difficult for a person to deal with stress in the workplace. Dr. Owen never made such a finding, however, and it would have been unusual for him to do so because difficulty coping with stress is typically attributable to a mental limitation rather than physical pain.

agency consultants use on initial review and reconsideration of a disability application. *Smith*, 821 F.3d at 1268-69. *Smith* teaches that the ALJ must take into consideration the consulting doctor's opinion, but that opinion is not necessarily expressed in the check-the-boxes-style section I that precedes the narrative-style opinion in section III of the standard form. *Id.* at 1269 n.2. In *Smith*, the court held that an ALJ is not required to incorporate or discuss additional moderate limitations when the ALJ's RFC is consistent with the consulting doctor's opinion on how the claimant is limited in the ability to perform work-related activities. *Id.* at 1270; *see also Vialpando v. Berryhill*, No. 18-cv-425 SCY, 2019 WL 1865205, at *5-7 (D.N.M. Apr. 25, 2019).[8] In this case, Dr. Owen did not express his opinion in the form of checkbox-style lists. Instead, he expressed his opinion in narrative language as follows:

> Ms. Smith can understand simple questions and instructions. She would have marked difficulty dealing with detailed, complex communication. She would have moderate difficulty dealing with stress in the workplace. She would have moderate difficulty interacting with others in an employment setting. She would have moderate difficulty focusing and persisting at most work tasks. She would have moderate to marked difficulty adapting to change in the workplace.

AR 419. The ALJ's RFC is inconsistent with this narrative assessment. This differs from the situation in *Smith*, where the ALJ essentially adopted the doctor's narrative as the claimant's RFC. 821 F.3d at 1269 ("The administrative law judge arrived at a similar assessment . . . .").

---

[8] In *Vialpando*, this Court provided three situations where the absence of ALJ discussion about a moderate limitation constitutes no error. 2019 WL 1865205, at *6. One is when the ALJ justifiably gives the doctor's opinion little to no weight. That does not apply here because the ALJ gave Dr. Owen's opinion "partial weight." AR 4504. Second, an ALJ need not discuss a moderate limitation when the assignment to unskilled or simple and routine work can incorporate or otherwise account for the moderate limitation. As explained below, the ALJ's RFC in this case did not account for Dr. Owen's moderate or marked limitations. *Infra*, pp. 12-13. Finally, when the doctor who assessed the moderate limitation has also reached an opinion on residual functional capacity in his or her narrative discussion, the ALJ may incorporate that assessment without discussing the moderate limitations also assessed by the doctor. That is not the case here because Dr. Owen's opinion consisted of the moderate-to-marked limitations themselves. AR 417-19.

Thus, to the extent *Smith* has relevance, it weighs against, rather than for, the Commissioner's position.

In arguing otherwise, the Commissioner addresses some, but not all of the limitations Dr. Owen found Ms. Smith to have. Specifically, the Commissioner argues that the ALJ accounted for Ms. Smith's "marked difficulty dealing with detailed complex communication" by restricting Ms. Smith to "simple, routine tasks" and dealt with Ms. Smith's "moderate difficulty focusing and persisting at most work tasks" by finding that Ms. Smith "cannot perform work at a production rate pace or perform tandem tasks." Doc. 25 at 16-17. The Commissioner, however, does not posit how the ALJ dealt with Dr. Owen's assessments that Ms. Smith "would have moderate difficulty dealing with stress in the workplace," "moderate difficulty interacting with others in an employment setting," and "moderate to marked difficulty adapting to change in the workplace."

According to the Administration, "the ability to respond appropriately to changes in (a routine) work setting" is a mental ability needed for *any* job. POMS § DI 25020.010, § B(a)(a).[9] And so is the ability to deal with stress. SSR 85-15, 1985 WL 56857, at *5-6 (Jan. 1, 1985) ("The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. . . . Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job."). The limitations Dr. Owen assessed cannot be ignored if they relate to crucial work skills. *Haga*, 482

---

[9] The Social Security Administration Program Operations Manual System ("POMS") is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The reviewing court will defer to the POMS provisions unless they are arbitrary, capricious, or contrary to law. *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001).

F.3d at 1208 (even "a moderate impairment is not the same as no impairment at all"). Because the ALJ failed to discuss the moderate-to-marked limitations Dr. Owen assigned to Ms. Smith and because at least three of these limitations are unaccounted for in the ALJ's RFC, the Court cannot affirm the ALJ's decision.

      D.      <u>The Court Will Remand For A Rehearing.</u>

Ms. Smith requests that the Court order the payment of benefits outright rather than remand for a rehearing. Doc. 21 at 27. The Tenth Circuit has indicated that "[w]hether or not to award benefits is a matter of . . . discretion." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). Factors relevant to the decision are "the length of time the matter has been pending" and "whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Id.* (internal quotation marks and alterations omitted). In *Salazar*, the Tenth Circuit indicated that "more than five years" is a lengthy amount of time, weighing in favor of awarding benefits outright. *Id.* Ms. Smith is correct that her application has been pending for an even longer time—eight years.

On the second factor, however, the Court does not agree that additional fact-finding would serve no useful purpose. The rule is that the ALJ must sufficiently explain her decision, *Haga*, 482 F.3d at 1208, not that she must accept Dr. Owen's opinion in full. The ALJ was understandably confused by Dr. Owen's opinion, since Dr. Owen diagnosed Ms. Smith with no cognizable mental health disorders, AR 418, yet arrived at a host of non-exertional limitations, AR 419, the basis for which is unexplained. In addition, there is no evidence in this record that Ms. Smith has sought any mental health treatment. At the hearing, however, ALJ Farris did not

ask Ms. Smith about her reasons for not seeking such treatment. AR 4525; *see* SSR 16-3p,[10] 2017 WL 5180304, at *9 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints."). Therefore, further record development could be useful. Ultimately, it is not this Court's role to determine whether Dr. Owen's opinion should be accepted or rejected. The Court must remand for the ALJ to do so in the first instance, with a proper explanation.

**IV.     Conclusion**

For the reasons stated above, Ms. Smith's Motion To Reverse And Remand For Payment Of Benefits, Or In The Alternative, For A Rehearing, With Supporting Memorandum (Doc. 21) is **GRANTED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**

---

[10] SSR 16-3p is applicable for decisions made on or after March 28, 2016. *See* 2017 WL 5180304, at *13 n.27.